**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3732-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMRIT SINGH, a/k/a
ANDY SINGH,

    Defendant-Appellant.

_____

> Submitted November 7, 2024 – Decided November 20, 2024
>
> Before Judges Natali and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-04-0436 and 15-04-0437.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).
>
> Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Amrit Singh appeals from the June 20, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We previously discussed the underlying facts and procedural history of defendant's case when we affirmed his conviction. State v. Singh, No. A-3161-16 (App. Div. July 5, 2019) (slip op. at 4-8). We include a summary of the facts for purposes of addressing defendant's arguments.

On January 20, 2015, Kamlesh Shah was working as a cashier at a gas station in Metuchen. Shortly after ten p.m., a man entered the gas station armed with a machete, threatened Shah, and demanded money. Shah testified the man was five feet nine or five feet ten inches tall, wore black clothing, gloves, and a face covering. Shah could not see his face. The man came behind the counter and told Shah to empty the register and lottery machine. He demanded a bag, so Shah got a plastic bag and placed approximately $2,000 to $2,200 in it. The man grabbed the bag and ran from the gas station. The robbery was captured on the gas station's surveillance video.

Shah watched the man run south on Route One into the parking lot of a nearby doughnut shop. Woodbridge Police Officer Jeian Rastegarpanah and his

partner were dispatched to the scene. The suspect was described as a male wearing dark clothing who fled south on Route One.

Following these instructions, the officers drove to a nearby apartment complex, where they saw a man wearing dark clothing, approximately five feet eight inches or five feet nine inches tall. They exited the car and attempted to approach the suspect to speak with him. The man turned his head toward the officers and started running. Officer Rastegarpanah saw the suspect's face for "maybe a second, half a second" when the suspect turned his head before fleeing.

The officers gave chase and radioed to headquarters they were in foot pursuit. Officer Rastegarpanah saw the suspect drop a shopping bag during the chase. He lost sight of the man as the man ran down a street near the apartment complex. Officer Rastegarpanah began to search the surrounding area and noticed an open gate into the yard of a nearby house. He entered the yard and saw a black sweatshirt on the ground. He continued around the back of the house and found defendant wearing dark clothing with his back against the house, sweating, and breathing heavily.

After a struggle, Officer Rastegarpanah and Detective Jorge Quesada arrested and searched defendant, finding no weapons. Defendant told the officers he was only in the area because he was "trying to score some drugs."

3

Defendant was transported to the hospital. Officers found a multi-colored jacket on the ground where defendant had his back against the house. Defendant's wallet containing his driver's license, credit cards, and a foil packet of Suboxone, a controlled dangerous substance, were found in a pocket of the jacket. Defendant had thirty cents in his pocket. Officers also found a torn black t-shirt, a black sweatshirt, and an ear warmer in the yard where defendant was arrested.

Officer Rastegarpanah returned to the area where he observed the suspect discard the shopping bag and found a knitted cap, the plastic shopping bag, which contained the proceeds from the robbery, and a machete. At the hospital, officers seized a sweatshirt, one glove from the pocket of the sweatshirt, and defendant's sneakers. Police retrieved surveillance video of the robbery from the gas station.

Defendant was indicted for: first-degree robbery, N.J.S.A. 23C:15-1, third-degree theft, N.J.S.A. 2C:20-3; third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d); third-degree resisting arrest by force, N.J.S.A. 2C:29-2(a)(3); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2); fourth-degree obstruction, N.J.S.A. 2C:29-1; and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).

At trial, Officer Rastegarpanah identified defendant as the man he pursued and arrested. He specifically identified defendant as the man he first encountered in the parking lot of the apartment complex before the foot pursuit. The surveillance video of the robbery was played for the jury and the jury was able to compare the sneakers defendant was wearing when he was arrested to the sneakers worn by the individual who robbed the gas station as seen in the video. Detective Quesada testified that the sneakers worn by the individual in the surveillance video matched the sneakers defendant was wearing when he was arrested. Shah identified the machete as the weapon used during the robbery and the plastic bag as the bag he put the cash in during the robbery.

The jury convicted defendant on all counts.[1] After appropriate mergers, the court sentenced defendant to fourteen-years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for first-degree robbery. The court imposed a consecutive term of one year for the fourth-degree certain persons offense and concurrent sentences for the remaining offenses.

On August 4, 2022, defendant filed a petition for post-conviction relief (PCR). Defendant argued ineffective assistance of counsel because defense

---

[1] According to the amended judgment of conviction, the jury found defendant guilty of the lesser-included disorderly persons offense of resisting arrest rather than third-degree resisting arrest by force.

counsel failed to establish he was a frequent customer of the gas station and Shah would have identified him based on his demeanor and voice but did not. Specifically, defendant certified he: "[E]xplained to [defense counsel he] knew all the people who worked at the gas station really well, including . . . Shah, and they knew [him. He] went there almost every day for years. There is no way . . . Shah would have failed to recognize [him] from [his] voice alone." Defense counsel also failed to: (1) employ a video expert to establish the sneakers he was wearing when he was arrested did not match the sneakers in the surveillance video; and (2) investigate the witness defendant identified, C.A., who could have established he was in the area for a drug deal.

On June 20, 2023, the court entered an order denying defendant's petition for PCR supported by a written opinion dated June 21, 2023. The court found defense counsel made a strategic decision not to highlight the fact that defendant frequented the gas station and his prior relationship with Shah. It noted Shah never identified defendant as the perpetrator and was not asked to listen to voice samples to identify defendant. Given the "substantial amount of evidence against" defendant, the court found introducing evidence that he and Shah "knew each other . . . would hardly lend itself to the idea that the jury would come to a different conclusion."

The court rejected the claim that counsel was ineffective for not retaining a video expert because the proposed expert's examination was "inconclusive" and revealed numerous similarities between the sneakers defendant was wearing and the sneakers in the surveillance video. It found the decision not to retain a video expert was strategic and there is no reasonable probability the proposed expert testimony would have led to a different result at trial.

The court rejected defendant's claim that defense counsel failed to investigate and subpoena C.A. to establish he was in the area for a drug deal. It noted the police and a defense investigator interviewed C.A., but she denied she was involved in a drug transaction with defendant and refused to cooperate. The court also found even if C.A. did testify, there is no reason to conclude the jury would have reached a different decision given the strength of the State's case.

On appeal, defendant raises the following points for our consideration.

> DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE AND ARGUE DEFENSES AT TRIAL THAT WOULD LIKELY HAVE PRODUCED A DIFFERENT RESULT.
>
> > (A)  Counsel was ineffective for not arguing defendant had a prior relationship with the victim and because of such if he were the robber he would have been recognized by his voice.

(B)    Counsel was ineffective for not employing a video expert to show the shoes he was arrested in did not match the shoes worn by the robber on the surveillance video.

(C)    Counsel was ineffective for not investigating defendant was at the location where he was arrested for the sole purpose of a drug deal.

We affirm substantially for the reasons set forth in the court's June 21, 2023 written opinion.  We add the following comments.

Because the PCR judge did not hold an evidentiary hearing, we review both the factual inferences drawn by the judge from the record and the judge's legal conclusions de novo.  State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).[2]  A defendant bears the burden of establishing a prima facie claim for PCR.  State v. Gaitan, 209 N.J. 339, 350 (2012).  A defendant must "do more than make bald assertions

---

[2]  To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance.  Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome of the proceeding.  Fritz, 105 N.J. at 58.

that [they were] denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, the defendant must demonstrate "how specific errors of counsel undermined the reliability of the" proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); see also Fritz, 105 N.J. at 52 ("[P]rejudice must be proved . . . it is not presumed."). "The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543 (citing Fritz, 105 N.J. at 52). The court should review counsel's performance in the context of the evidence against defendant at the time of the plea or trial. State v. Castagna, 187 N.J. 293, 314-15 (2006).

An evidentiary hearing is warranted only when "'a defendant has presented a prima facie [claim] in support of [PCR],'" meaning a "defendant must

demonstrate a reasonable likelihood that [their] claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997) (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (quoting Marshall, 148 N.J. at 158). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. Ibid.

The court correctly determined counsel's decision not to attempt to show Shah "would have been able to identify defendant by his voice based on their long-standing prior relationship" was precisely the type of strategic decision that is entitled to deference and a presumption of effectiveness on PCR. Strickland, 466 U.S. at 690-91. Shah never identified defendant by voice or otherwise. Defendant's contention that Shah would have known he was not the perpetrator based on his voice is based on nothing more than speculation.[3] Defense counsel is obligated to make strategic trial decisions based on the law and the evidence,

---

[3] Defendant also relied on witness statements by his biological cousins, who asserted defendant frequented the gas station as a child and the employees who previously worked there knew him. Neither statement identifies Shah as one of the employees who previously worked there.

not to gamble based on speculation that the victim might suddenly realize the defendant was not the perpetrator. The very real risk that such a strategy would have resulted in an invited in-court identification by Shah was far too great for counsel to disregard. A criminal trial is not the time to blindly experiment with long-shot stratagem.

In addition, defendant does not articulate what counsel specifically failed to do. Instead, he contends counsel failed to "requir[e] that the victim's voice identification be held to the appropriate legal standard" without explaining how counsel would have done that even though Shah did not identify defendant at all, much less by voice. Defendant likewise contends counsel "took no action to . . . explore whether the victim would be able to identify . . . defendant's voice" and employ "the principles of identification to test the victim" without explaining what counsel allegedly did not do. Because defendant did not testify at trial, it is not at all clear how defendant contends counsel should have "explored" whether Shah would have been able to identify his voice. To establish a prima facie case of PCR, a defendant must do more than make "bald assertions that [they were] denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. Defendant failed to meet that standard in this case.

11

Moreover, Shah testified at trial and observed defendant in the courtroom. If, as defendant contends, Shah knew him so well he would have known defendant was not the perpetrator, that would have been apparent to Shah at trial. Defense counsel's decision was not only strategic and entitled to a presumption of effectiveness but was sound considering the facts and circumstances of the case. Counsel did not fall below the constitutional threshold for effectiveness.

We are not persuaded by defendant's claim that counsel was ineffective for not retaining a video expert. Defendant's proffered expert opined that after enlarging and sharpening the surveillance video, his "examination [was] inconclusive." Although he found there were "frames . . . which call into question the certainty that" the sneakers defendant was wearing were the same as the sneakers in the video, other "features of the shoes in the video are similar." These similarities include "the white mid-sole forward of the heel, dark uppers and the three white sport stripes" and "a similar white spot near the tongue area of the left shoe." The court correctly determined the decision not to retain an expert was a strategic decision entitled to deference, and there was no reasonable probability retaining an expert to testify that his examination of the video is "inconclusive" would have affected the outcome of the proceeding.

12

Defendant's claim that counsel should have investigated the witness he identified who would have verified he was only in the area to buy drugs lacks merit. Contrary to defendant's claim, a defense investigator did interview C.A. in 2016, and she refused to cooperate. In addition, the police interviewed her on the night of the robbery, and she denied involvement in a drug transaction with defendant. There is no reason to conclude counsel could have compelled her to appear at trial and testify she was meeting defendant to complete a drug transaction. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." Worlock, 117 N.J. at 625.

We are satisfied the court correctly determined defendant failed to satisfy either prong of the Strickland test and failed to present a prima facie claim of ineffective assistance of counsel. The court did not misapply its discretion by denying defendant's request for an evidentiary hearing.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3732-22